**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LEE ROSENBERG, et al.,<br><br>        Plaintiffs,<br><br>  v.<br><br>COLT'S MANUFACTURING COMPANY LLC, et al.,<br><br>        Defendants. | 1:04-CV-5418 OWW TAG<br><br>LEE ROSENBERG'S APPLICATION FOR APPROVAL OF PARTIAL COMPROMISE OF MINOR'S CLAIM (DOC. 38 & 74)<br><br>COLT PARTIES' REQUEST FOR ENTRY OF DISMISSAL OF ALL CLAIMS, CROSSCLAIMS, AND COUNTERCLAIMS RELATING TO THE COLT PARTIES PURSUANT TO SETTLEMENT AGREEMENT. |

## I. INTRODUCTION

This case involves the shooting death of Jordan Rosenberg, Plaintiff Alex Rosenberg's brother, on June 27, 2003 in the home of Defendant Craig Hansen. Lee Rosenberg, Jordan and Alex's father, initiated this lawsuit on his own behalf and on behalf of his two sons. The complaint names as defendants Colt's Manufacturing Co., LLC and New Colt Holding Corporation (the "Colt Parties"), Craig Hansen, and Sharrie Rodzon-Harris, Jordan and Alex's mother.

Before the court for decision are two separate requests for court approval of settlement agreements between various parties and Alex Rosenberg, a minor. Doc. 38, filed Oct. 14, 2004, re-noticed by Doc. 74, Aug. 8, 2005; Doc. 75. The first settlement for which approval is sought is between Plaintiffs Lee and Alex

Rosenberg, and Defendant Craig Hansen, for the limit of Hansen's his $100,000 insurance policy. The parties agreed to split the proceeds evenly between Lee Rosenberg, Alex Rosenberg, and Sharrie Rodzen-Harris.

The second settlement is between, on the one hand, Lee Rosenberg, Sharrie Rodzen-Harris, and Craig Hansen, and on the other the Colt Parties. The parties have agreed to dismiss all the remaining claims in the case with prejudice, except that all claims brought on behalf of or against Alex Rosenberg will be dismissed without prejudice because he is a minor.

## II. **FACTUAL BACKGROUND**

At some point prior to June 27, 2003, Rodzon-Harris developed a relationship with defendant Hansen. She and her two sons, Alex and Jordan, began staying at Hansen's home. On June 27, 2003, Rodzon-Harris left the two boys alone in Hansen's house.

Alex obtained a pistol from a night stand in one of the bedrooms. According to the police report, Alex believed that he had unloaded the pistol and made it inoperable by removing the magazine from the gun. Alex then returned to the living room where the two boys had been watching the war movie, "We Were Soldiers." Alex pointed the pistol at Jordan's head and pulled the trigger. A bullet remained in the weapon and was discharged. Jordan was fatally wounded.

The weapon fired by Alex was a Colt 45 designed and manufactured by Colt's Manufaturing Company LLC, and/or its predecessors in interest. The weapon, bearing the serial number 369361, was designed in 1911 and was not manufactured with either

**2**

a "loaded chamber indicator" or a "magazine disconnect safety." Plaintiff alleges that both of these safety technologies were readily available to Colt in 1911.  Doc. 51 at 2.  Colt claims that the particular weapon in question was manufactured for military use and distributed to a military base in California. Subsequent to its manufacture, the weapon was retrofitted to utilize 9mm ammunition.

### III.   PROCEDURAL HISTORY/ SUMMARY OF CLAIMS

The Complaint names as defendants Craig Hansen, Sharrie Rodzon-Harris Colts' Manufacturing Company, LLC, New Colt Holding Corporation, and Does 1 through 100, who represent fictitious wholesalers, retailers, or entities otherwise involved in distribution of the firearm to the public.  The complaint's "first cause of action" for wrongful death is sub-divided into six "counts": (Count 1) negligence against Sharrie Rodzon-Harris; (Count 2) negligence against Craig Hansen; (Count 3) liability for failure to warn or instruct against the Colt Parties; (Count 4) strict products liability/design against the Colt Parties; (Count 5) products liability/negligence against the Colt Parties; and (Count 6) failure to recall or retrofit against the Colt Defendants.  A "second cause of action" for infliction of emotional distress contains five "counts": (Count 1) liability for failure to warn or instruct; (Count 2) strict products liability/design; (Count 3) products liablity/negligence; (Count 4) failure to recall or retrofit; and (Count 5) punitive damages. Finally, a "third cause of action" for survivorship contains the same five counts as the second cause of action for infliction of emotional distress.

Plaintiff maintains that the gun was "defective at the time of its design in 1911 because it did not include readily available technology (for which Colt held patents) including a loaded chamber indicator and a magazine disconnect."  Doc. 51 at 2.  Plaintiff contends that the Colt Parties had a continuing duty to recall or retrofit the weapon: "with tens of thousands of Colt 45s among the civilian poplation as surplus, even if a weapon without the safeties was suitable for military use, the lack of such safeties should have prompted a retrofit offer/warning.  Doc. 51 at 4.  Plaintiff asserts that Colt knew that the lack of safety features in its original design has "been the cause of numerous deaths, many of them children, resulting from the fact that persons handling the weapon have no easy way of determining whether or not the chamber contains a round. And many believe that withdrawing the magazine precludes the weapon from firing."  *Id*. at 6.

Simultaneous with the filing of the complaint, Lee Rosenberg moved ex parte to be be appointed as guardian ad litem for Alex. Doc. 2, filed Mar. 11, 2004.  Mr. Rosenberg was ordered to provide notice to all interested parties and to set the matter for a hearing.  Doc. 5, filed Mar. 16, 2004.  The petition was set for a hearing before Magistrate Judge Goldner.  Doc. 12, filed May 26, 2004.

Craig Hansen answered the complaint and filed counterclaims against Alex Rosenberg and the unnamed defendants for equitable indemnity, apportionment of fault, and declaratory relief concerning cors-defendants' obligations to indemnify Hansen. Doc. 13, filed May 4, 2004.  Hansen also filed cross-claims against Ms. Rodzon-Harris on the same grounds.  *Id*.

**4**

Ms. Rodzon-Harris filed a declaration in opposition to Lee Rosenberg's petition for appointment as guardian ad litem.  Doc. 18, filed May 21, 2004.  Ms. Rodzon-Hariss' lawyer, Charles Oren, filed a declaration on behalf of Alex Rosenberg, also in opposition to the appointment of Lee Rosenberg's as Alex's guardian ad litem.  Doc. 17, filed May 21, 2004.  Alex also counter-petitioned for the appointment of his grandfather, Wesley Harris, as guardian ad litem.  Doc. 17, Filed May 21, 2004.

A few weeks later, on June 4, 2004, Lee Rosenberg, Ms. Rodzon-Harris and Alex entered into an agreement concerning a number of issues, including the appointment of a guardian ad litem for Alex.  Doc. 20.  Ms. Rodzon-Harris withdrew her objection to the appointment of Lee Rosenberg as guardian ad litem under the "second cause of action" (infliction of emotional distress).  *Id*. at 2.  Alex withdrew his nomination of Wesley Harris as guardian, but left it up to "the Court to determine whether or not to appoint Lee Rosenberg, or a disinterested party as Guardian Ad litem."  *Id*.  It was further stipulated that "this Court will appoint a Guardian Ad litem for Alex Rosenberg" who will "settle with Craig Hansen upon the necessary terms and conditions, and apply for approval of that settlement and allocation of the proceeds as set forth hereinabove."  *Id*. at 3. Finally, it was agreed that the guardian ad litem would dismiss Ms. Rodzon-Harris as a defendant in the wrongful death action, provided that Ms. Rodzon-Harris waived any interest in the wrongful death action.

On June 24, 2004, Magistrate Goldner entered an order appointing Lee Rosenberg as guardian ad litem for Alex. Essentially simultaneiously, the undersigned district judge

**5**

entered an order requiring the appointment of a disinterested individual as guardian for Alex and setting forth certain procedures that would govern the guardianship. Doc. 25, filed June 25, 2004. Counsel for Mr. Rosenberg and Ms. Rodzon-Harris pointed out the conflict to the district court. Docs. 27 and 28, filed July 1, 2004. The district court amended its order, adopting the Magistrate Goldner's decision to appoint Lee Rosenberg as guardian ad litem. Doc. 29, filed July 2, 2004.

Plaintiffs then reached an agreement with Craig Hansen's insurance carrier and sought court approval of an even distribution of Hansen's $100,000 settlement among Lee Rosenberg, Alex Rosenberg, and Sharrie Rodzen-Harris.[1] Attorney Lee Mitchell Jacobson was appointed Alex's guardian on June 6, 2005. The parties have now reached settlements resolving all of the claims in this case and now request court approval of Alex's participation in the settlement agreements.

### III.  DISCUSSION

This is a diversity action. California Code of Civil Procedure Section 372(a) requires court approval for any compromise entered into by a guardian ad litem on behalf of a minor. The court's role in approving a minor's settlement is to

---

[1] Initially, Lee Rosenberg also requested permission to apply both his and Alex's portion of the $100,000 toward the costs of litigating against the remaining defendants. Alex Rosenberg and Ms. Rodzen-Harris objected to this request. *See* Doc. 49 at 2. The parties later agreed that the best course of action would be to appoint an independent guardian for Alex. Lee Rosenberg is no longer requesting to use Alex's share of the proceeds to pursue claims against the Colt Parties because all those claims have been resolved.

**6**

ensure that "whatever is done is in the minor's best interests." *Goldberg v. Superior Court*, 23 Cal. App. 4th 1378, 1382 (1994)

At oral argument on the instant motions for approval, Alex's court-appointed guardian ad litem, Lee Jacobson, represented that he had discussed both settlement options with Alex and concluded that both settlements were in Alex's best interests. The settlement between the Colt Parties and Alex calls for dismissal of all claims and cross-claims without prejudice, leaving Alex free to renew claims against the Colt Partiess when he reaches the age of majority.

Mr. Jacobson represented that the settlement concerning Mr. Hansen's insurance policy, evenly distributing the proceeds among Alex and his parents, is in Alex's best interest. Alex, through Mr. Jacobson, expressed interest in having his portion of the settlement proceeds placed into an structured settlement annuity that would begin paying annuities when Alex reaches the age of majority. All parties agreed to this request and the district court finds that it is in Alex's best interest to structure his settlement in this fashion.

Accordingly, Alex's agreement in the above-described settlements resolving all pending claims in this case is **APPROVED.**

The parties shall submit a form of judgment consistent with this memorandum opinion within five days of service of this order.

**Dated: September 23, 2005**          **/s/ OLIVER W. WANGER**

                                        **Oliver W. Wanger**
                                        **UNITED STATES DISTRICT JUDGE**

**7**